UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| O.A.B.R.,<br><br>Petitioner,<br><br>v.<br><br>HERNANDEZ et al.,<br><br>Respondents. | Case No. 2:26-cv-3527<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

## I. INTRODUCTION

Petitioner O.A.B.R. is a Venezuelan citizen who entered the United States without inspection. Dkt. 6 ¶ 4. On September 18, 2022, Petitioner was apprehended and detained by a United States Customs and Border Protection ("CBP") officer. *Id.*[1] Five days later, Petitioner was released from custody on temporary humanitarian parole with instructions to report to a U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") office. *Id.*; Dkt. 5-2 at 2. On December 1, Petitioner reported to the Seattle ERO office where ERO issued him a notice to appear ("NTA") charging him as inadmissible under Immigration

[1] The Petition states that O.A.B.R. entered the country in October 2022. Dkt. 1 ¶ 2. It also states that he was held for seven days in a tent and then released from custody. *Id.* The exact dates of Petitioner's entry and release are not material to the Court's analysis.

and Nationality Act ("INA") § 212(a)(6)(A)(i). Dkt. 6 ¶ 5. ICE then placed Petitioner on an order of release on recognizance ("OREC") under INA § 236, 8 U.S.C. § 1226. *Id.*; Dkt. 5-6 at 2; Dkt. 5-11 at 2. The OREC required Petitioner to "report for any hearing or interview" as directed by ICE or ERO; "surrender for removal" if ordered; and periodically report to immigration authorities "as directed." Dkt. 5-6 at 2. It did not require electronic monitoring or a curfew. *Id.* The OREC also advised that failure to comply with its conditions could result in revocation of release and re-detention. *Id.*

Petitioner subsequently applied for asylum and appeared before an immigration judge, who scheduled his individual hearing for October 29, 2027. Dkt. 6 ¶¶ 6–7. Petitioner also received employment authorization and built a life in the United States with his wife and their U.S. citizen child, born February 6, 2024. Dkt. 1 ¶ 2; Dkt. 6 ¶ 6; Dkt. 7-1 at 3. Petitioner has no criminal convictions. Dkt. 1 ¶ 3; Dkt. 5-9 at 4.

ICE permitted Petitioner to remain at liberty for nearly four years under the OREC. The record reflects that ICE scheduled his first required check-in for nearly six months after the December 2022 OREC. Dkt. 5-6 at 2. The government's own sworn declaration further establishes that Petitioner appeared for a required in-person check-in on June 11, 2025, and that ICE scheduled his next appointment for June 11, 2026—one year later. Dkt. 6 ¶ 8. These extended reporting intervals, together with the absence of any electronic-monitoring requirement, demonstrate ICE's assessment that Petitioner could remain at liberty under minimal supervision. *See id.* ¶¶ 5–8.

On August 27, 2026, ICE detained Petitioner and revoked his OREC based on an alleged failure to attend his June 2026 check-in. Dkt. 6 ¶¶ 9–11; Dkt. 5-6 at 2. Notably, ICE's custody determination issued that same day expressly identifies INA § 236 as the statutory basis for Petitioner's detention, consistent with the authority under which ICE had previously released

him on recognizance. Dkt. 5-11 at 2. Respondents now contend, however, that Petitioner's detention is governed by INA § 235, 8 U.S.C. § 1225. Dkt. 4 at 4–6.

The record also raises serious questions about the factual basis for revoking Petitioner's release. Although Respondents assert that Petitioner missed his June 2026 check-in, they provide no underlying appointment record substantiating that allegation. Petitioner, by contrast, submitted evidence that ICE rescheduled the appointment for February 2027. Dkt. 7-1 at 4. The August 2026 Form I-213 also contains multiple objective errors and inconsistencies. *Compare* Dkt. 5-9 at 2 (stating that Petitioner "does not have children or dependents"), *with* Dkt. 5-9 at 4 (noting that Petitioner stated he has one minor U.S. citizen child); *see also id.* at 4 (noting that Petitioner was paroled on November 23, 2022, whereas the sworn declaration submitted by Respondents identifies September 23, 2022, as the parole date, *see* Dkt. 6 ¶ 4); *id.* (identifying November 23, 2022 as the date CBP issued Petitioner with an NTA and released him on an OREC, whereas Respondents' sworn declaration and substantiating record material show those actions took place in December 2022, *see* Dkt. 6 ¶ 5, Dkt. 5-6 at 2). Respondents also submit a sworn declaration stating that Petitioner has not requested a bond hearing from an immigration judge, Dkt. 6 ¶ 15, even though their own custody determination form, submitted in the same filing, shows that he did. Dkt. 5-11 at 2.

The circumstances of Petitioner's August 2026 re-detention are disputed. Respondents submitted a sworn declaration stating that Petitioner fled from ICE officers, first in his vehicle and then on foot. Dkt. 6 ¶ 11. Petitioner disputes that account and submitted a sworn declaration stating that he did not flee and that two masked officers tackled and severely beat him, inflicting injuries to his groin, hip, knee, and teeth. Dkt. 7-1 at 3; *id.* at 8. Petitioner also submitted photographic evidence and medical records documenting his injuries. *Id.* at 9-10, 14; Dkt. 1-1 at 2–5. Although ICE's Form I-213 states that body-worn camera footage of the arrest was

recorded, Respondents submitted neither that footage nor declarations from the arresting officers. Dkt. 5-9 at 2–3. The Court need not resolve these factual disputes, however, to determine whether Respondents afforded Petitioner the process constitutionally required before re-detention.

Following his arrest, Petitioner was transferred to the Northwest ICE Processing Center ("NWIPC"), where he remains detained. Dkt. 6 ¶¶ 11, 16. Although Petitioner requested immigration-judge review of his custody determination on August 27, 2026, he has not received a bond redetermination hearing, and the record does not establish that one has been scheduled. Dkt. 5-11 at 2; Dkt. 6 ¶ 15; Dkt. 1-3 at 1–2.

On September 20, 2026, Petitioner filed this petition for a writ of habeas corpus, arguing that Respondents violated his due process rights by revoking his OREC and re-detaining him without advance notice or an opportunity to be heard. Dkt. 1; Dkt. 7. Respondents oppose the petition, maintaining that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) and, alternatively, that his alleged violation of the OREC justified re-detention without a pre-deprivation hearing. Dkt. 4.

The habeas petition is now ripe for the Court's review. For the following reasons, the Court GRANTS the petition.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

First, the parties dispute the statutory authority governing Petitioner's detention. Federal Respondents contend that Petitioner is lawfully subject to mandatory detention under 8 U.S.C. § 1225(b)(2). Dkt. 4 at 4–6. Petitioner argues that prior to his most recent detention, the government has treated him as subject to discretionary detention under 8 U.S.C. § 1226(a), and his current detention thus falls under that statute. Dkt. 7 at 16–28. This Court has explained that the government's treatment of a petitioner over the course of their removal proceedings is especially relevant in determining the applicable detention authority. *Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025). Where, as here, a petitioner was released on an OREC after initial detention, he is then subject to § 1226(a) if re-detained, absent changed circumstances justifying detention under a different statute. *Id.* at *7 (citing *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007)). And this case is even clearer because the *current* custody determination form issued on August 27, 2026 after Petitioner's arrest expressly identifies Section 1226 as the statutory authority for Petitioner's current detention. Dkt. 5-11 at 2. The Court therefore agrees with Petitioner that he is subject to discretionary detention.

Turning to the parties' primary arguments, Petitioner contends that ICE violated his due process rights by re-detaining him over three years after his initial release without first affording him "written notice and a pre-deprivation hearing before a neutral decisionmaker to determine whether re-detention is warranted based on danger or flight risk." Dkt. 1 ¶ 46. He seeks immediate release from custody and an injunction prohibiting Respondents from re-detaining him "absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community and that no alternative to detention would mitigate those risks." Dkt. 1 at 17. Federal Respondents

counter that Petitioner's alleged OREC violation justifies his August 2026 re-detention, Dkt. 4 at 6–9, and that permanent injunctive relief requiring ICE to bear the burden of proof before detaining Petitioner in the future is inappropriate. *Id.* at 10. The Court agrees with Petitioner in both his due process and injunctive relief claims.

**A. Due process requires Petitioner's immediate release from custody.**

Petitioner analyzes his circumstances through the three-factor test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976), and discusses numerous cases from this district and elsewhere that have granted release to similarly situated petitioners. Dkt. 1 ¶¶ 28–43; *see, e.g.*, *E.A.T.B. v. Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash. 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130 (W.D. Wash. 2025); *Kumar v. Wamsley*, 2:25-cv-01772-JHC-BAT, 2025 WL 2677089, at *2–3 (W.D. Wash. Sept. 17, 2025). The principles of *Mathews* and procedural due process as applied to noncitizens living in the community under bonds or orders of supervision have been repeatedly established by the courts of this District. This Court will not retread that ground in every case, such as this one, that arises from Respondents' repeated, ongoing detention of noncitizens in violation of those principles. *See, e.g.*, *Lima Gamez v. Hernandez*, No. 2:26-cv-01104-BAT, 2026 WL 1382362, at *7 (W.D. Wash. May 18, 2026) ("Respondents have given no indication that they intend to stop indiscriminately re-detaining previously released persons without prior notice and opportunity to be heard, despite the voluminous caselaw in this district repeatedly declaring such arrests unlawful."); *Ortiz v. Hermosillo*, No. 2:26-cv-00384-TL, 2026 WL 607672, at *5 (W.D. Wash. Mar. 4, 2026) ("Respondents have been on notice in this District since at least August 19, 2025" yet "continue[] to re-detain petitioners in this District without due process."). Instead, the Court will focus on whether anything in the record here distinguishes this petition from this District's body of cases on procedural due process.

Federal Respondents argue that Petitioner's alleged OREC violation reduces both his liberty interest and the process due before re-detention because his initial release was "contingent on compliance with" his OREC conditions. Dkt. 4 at 6–9. But as Petitioner disputes that he missed the check-in, and the very purpose of a pre-deprivation hearing is to resolve disputed factual questions *before* the government can deprive a Petitioner of his liberty. Dkt. 7 at 10–14. The government cannot rely on a disputed allegation to justify denying Petitioner the very hearing at which he would have an opportunity to contest that allegation.

Indeed, this case illustrates that risk. Respondents allege that Petitioner failed to attend a required check-in in June 2026, yet Petitioner submitted evidence that ICE had rescheduled that appointment for February 2027. Dkt. 6 ¶¶ 8–9; Dkt. 7-1 at 4. A pre-deprivation hearing would have afforded Petitioner an opportunity to present that evidence and challenge the factual basis for revoking his release before being deprived of his liberty. Even assuming Respondents' account of the alleged violation is accurate, they do not explain how one missed check-in over several years establishes the sort of "urgent concerns" that would justify dispensing with pre-deprivation process. *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).

The Court concludes that the circumstances of Petitioner's re-detention are largely indistinguishable from the many due process cases decided in this District that have ordered release. *See, e.g.*, *Ramirez Tesara*, 800 F. Supp. 3d at 1137 (*Mathews* factors favored petitioner despite 40 alleged violations of release conditions); *M.Z.H. v. Hermosillo*, No. C25-2523-KKE, 2025 WL 3718655, at *5 (W.D. Wash. Dec. 23, 2025) (dispute over violations of release conditions "only highlights the magnitude of the risk of erroneous deprivation of Petitioner's liberty interest"). Applying the *Mathews* factors, Petitioner's substantial liberty interest in remaining free from physical detention, the demonstrated risk of erroneous deprivation absent an opportunity to contest the government's allegations, and Respondents' failure to show that

advance process would undermine an urgent governmental interest all weigh in favor of requiring a pre-deprivation hearing. The alleged violations of Petitioner's release conditions do not alter that conclusion. The government's decision to re-detain Petitioner without notice or hearing violated his right to procedural due process. The Court therefore GRANTS the habeas petition and ORDERS Respondents to release Petitioner within 24 hours of this order.

**B. Petitioner is entitled to injunctive relief from re-detention.**

A petitioner seeking permanent injunctive relief must show

> (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Petitioner is the father of a two-year-old. Dkt. 1 ¶ 2; Dkt. 5-9 at 4. During his detention, he has suffered from physical injuries. Dkt. 1-1 at 2–5; Dkt. 7-1 at 3, 8–10, 13–14. Petitioner has undoubtedly suffered irreparable injuries—his unlawful re-detention and violation of his due process rights, loss of regular contact with his young child and wife—where monetary damages are unavailable or inadequate to compensate him. *Saadhom v. Bondi*, No. 2:26-CV-00425-TL, 2026 WL 698786, at *6 (W.D. Wash. Mar. 12, 2026) (*citing Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). The balance of hardships favors Petitioner, "as the injunction requires only that Respondents comply with the Constitution before re-detaining him." *Saley v. Scott*, No. 2:26-CV-00797-JNW, 2026 WL 914810, at *5 (W.D. Wash. Apr. 3, 2026). Lastly, "the public interest is served by an order prohibiting Respondents from violating the Due Process Clause." *Id.*

Petitioner has satisfied the requirements for a permanent injunction. As other orders in this District have observed, Respondents have demonstrated an intent to continue their practices

no matter how many federal district courts conclude that those practices violate the law. *See, e.g.*, *Lima Gamez*, 2026 WL 1382362, at *7. Petitioner thus faces an ongoing likelihood of irreparable harm. Absent circumstances urgently requiring arrest, the Court prohibits Respondents from re-detaining Petitioner as described below. *See Guillermo M. R.*, 791 F. Supp. 3d at 1035 ("There may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate."); *Caglar v. Wamsley*, No. 2:26-cv-00787-TMC, 2026 WL 1123515, at *5 (W.D. Wash. Apr. 24, 2026) (discussing burden of proof in re-detention hearings).

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS:

1. The petition for writ of habeas corpus (Dkt. 1) is GRANTED.

2. Within 24 hours of this Order, Respondents must RELEASE Petitioner O.A.B.R. subject to the terms of his initial OREC.

3. Respondents shall file a status report confirming Petitioner's release no later than October 15, 2026.

4. Respondents must return to Petitioner any personal property, including any personal identification document (other than a passport) and any employment authorization document.

5. Absent circumstances urgently requiring arrest or an administratively final order of removal, Respondents are ENJOINED from re-detaining Petitioner O.A.B.R. during the pendency of his removal proceedings absent written notice and a hearing before a neutral decisionmaker, at which the government bears the burden of proving by clear and convincing evidence Petitioner's dangerousness or risk of flight based on changed circumstances.

Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412 and the parties are encouraged to confer before filing a petition.

Dated this 13th day of October, 2026.

Tiffany M. Cartwright
United States District Judge